PETER P. AYER

V.

SIDNEY B. MEAD ET AL.

1. CONTRÀCT TO BUY WHEAT—FAILURE TO FURNISH MARGINS—EVI-
DENCE AND PLEADING.—As the order in this case, dated August 24, 1882,
" Buy me 5,000 year wheat; if you can not buy soon after the opening then
buy October," does not prove, nor is there any proof that defendant author-
ized plaintiffs to sell the wheat in case defendant failed to furnish margins
according to the custom of the board of trade, and even if it were permissi-
ble to look to the customs on the board of trade for an interpretation of the
language of this order, there is no proof that the wheat was ordered to be
purchased, or was purchased on the board of trade, nor is there any proof
that the plaintiffs were members of or did business on the board; the aver-
ments of the count in question were not sustained by proof.

2. EVIDENCE AS TO CUSTOMS OF BOARD OF TRADE.—The customs of
the board of trade were therefore *res inter alios*, and inadmissible as evi-
dence.

3. PURCHASE AND SALE.—In the second special count as there is no
averment that the wheat was ordered to be purchased, or that it was pur-
chased on the board of trade, or that it was purchased subject to any spe-
cial conditions, the ordinary rules of purchase and sale must apply, the
presumption being, in the absence of proof to the contrary, that payment
was to be made simultaneously with the delivery of the wheat at the time
agreed upon for such delivery.

4. INSTRUCTION.—The instruction given by the court is erroneous in not
being based on the evidence; in failing to embrace a sale as a part of its
hypothesis, but basing a liability upon a mere right to sell, and in stating
the measure of damages.

5. NECESSARY WHEAT SHOULD BE SOLD TO ASCERTAIN DIFFERENCE
BETWEEN BUYING AND SELLING PRICE.—Even if it were conceded that the
order to buy the wheat in this case is to be taken as qualified by a custom
on the board of trade, and that by such custom the plaintiffs were author-
ized to close out the deal by selling the wheat, it was indispensable to the
fixing of the amount of the loss that the plaintiffs should sell the wheat and
thereby ascertain the difference between the buying and selling price.

ERROR to the Circuit Court of Cook county; the Hon.
JOHN G. ROGERS, Judge, presiding.    Opinion filed October
23, 1883.

This was assumpsit, brought by the defendants in error
against the plaintiff in error, defendant below, to recover for

commissions alleged to be due to the defendants in error, on the purchase by them for the plaintiff in error of 5,000 bushels of wheat, and for losses sustained by them through the failure of the plaintiff to furnish margins for their protection in the purchase and sale of the wheat.

In addition to the common counts, the declaration contained two special counts, the first of which avers, in substance, that the plaintiffs were commission merchants, doing business on the Chicago Board of Trade; and that, August 24, 1882, in consideration that the plaintiffs would buy for the defendant on said board of trade, at the market price on said board of trade, 5,000 bushels of wheat, to be delivered at seller's option, on any day during the month of October, 1882, in accordance with a custom of trade on said board, which said wheat (it is averred in the declaration) is known as October wheat, the defendant promised to pay the plaintiffs $12.50, as their commissions for making such purchase; that he would deposit with plaintiffs the further sum of $250, to be held by them as security against loss caused by fluctuations in the market, which deposit (it is alleged) is known on said board of trade as margins; that if the market should decline to such an extent that said $250 should be exhausted, the defendant would furnish such further margins as the plaintiffs should call for to secure them against loss, in accordance with the custom of trade on said board; that when the wheat so to be purchased should be delivered to plaintiffs, the defendant would accept the same and pay to the plaintiffs the purchase price, less such sum as defendant had deposited as margins.

The declaration avers that August 24, 1882, the plaintiffs bought on the Chicago Board of Trade, for defendant, 5,000 bushels of wheat at 99 cents per bushel, to be delivered during the month of October; that they notified defendant of the purchase, and requested him to pay the commissions and margins as promised, which he refused to do; that wheat declining, the plaintiffs, September 12, 1882, sold the wheat on the board of trade for defendant's account, at a loss of $500, whereby the defendant became liable to pay to the plaintiffs that amount.

Ayer v. Mead.

The second special count is sufficiently stated in the opinion of the court.

The defendant pleaded non-assumpsit.    There was a jury trial, resulting in a verdict and judgment for the plaintiffs for $268.75, to reverse which the defendant prosecuted the present writ of error, and assigns various errors.    The facts sufficiently appear in the opinion.

Messrs. MATTHEWS & DECKER, for plaintiff in error; cited Beveridge v. Hewitt, 8 Bradwell, 480.

Mr. C. R. ADAMS, for defendants in error.

WILSON, J.    Nearly all of the material allegations in the plaintiffs' declaration, are destitute of any proof for their support.    The case seems to have been tried by the plaintiffs below, as if the purchase and sale of the wheat was a transaction on the board of trade, and that the order to buy the wheat in question is to be regarded as qualified by the customs and rules of the board in respect to margins, and the right of a broker in certain contingencies to sell the commodity purchased for the failure of his principal to furnish margins; and such is the theory upon which the first count in the plaintiffs' declaration is framed.    It alleges that the plaintiffs were members of and doing business on the board of trade; that the defendant requested them to buy for him on the board, at the market price, 5,000 bushels of wheat to be delivered at any time in the month of October, at the seller's option, in accordance with the custom of trade on said board; that he agreed to pay $12.50 for commissions and to deposit $250 as a margin for the plaintiffs' protection against loss, in case wheat should decline in price, and that if the decline should be so great as to exhaust the margin, he would deposit further margins in accordance with the custom of said board of trade.    After alleging the purchase of the wheat pursuant to the order, the declaration avers that the price of wheat declined, and that the defendant being requested to put up margins, and failing to do so, the plaintiffs sold the wheat September 12, 1882, on

the board of trade for his account, resulting in a loss of $268.75, for which the plaintiffs seek to recover.

The case as stated in this count is singularly barren of proof. Beach, one of the plaintiffs and the only witness called by them, testified that the only contract made between the parties in respect to the wheat in question was the written order of the defendant to buy, which order was introduced in evidence, and is as follows:

"August 24th, 1882.

Mr. Beach: Buy me 5,000 year wheat; if you can not buy soon after the opening, then buy October.

Yours truly,

P. P. AYER."

Beach and the defendant both testify that nothing was ever said about the terms of the order itself. Now, while the meaning of the order may be intelligible to a member of the board of trade, standing alone and unexplained by other proof as to its meaning, it falls very far short of proving the contract as alleged in this count of the declaration. It does not prove, nor is there any proof that the defendant authorized the plaintiffs to sell the wheat in case he failed to furnish margins, according to the custom on the board of trade. Even if it were permissible to look to the custom on the board of trade for an interpretation of the language of the order, there is no proof that the wheat was ordered to be purchased, or was purchased on the board of trade, nor is there any proof that the plaintiffs were members of, or did business on the board. There was thus a clear failure of proof to support the averments of this count.

From these considerations it necessarily results that the court erred in permitting the plaintiff Beach, as was done, to testify against the objection of the defendant, as to the custom of the board of trade, in requiring margins on orders to buy or sell grain for future delivery, and also as to the right of the broker to sell, for a failure to furnish margins when demanded. The customs of the board were *res inter alios*, and inadmissible.

The plaintiffs' second special count is self-contradictory

Ayer v. Mead.

and absurd. It alleges that, August 24, 1882, the plaintiffs bought for the defendant, at his request, 5,000 bushels of wheat at 99 cents per bushel, to be delivered to the plaintiffs on any day during the month of October, at the option of the seller, and to be delivered by the plaintiffs to the defendant, when said wheat should be delivered to them by the seller. the defendant to pay plaintiffs $12.50 as commissions. The declaration then avers that the market price of grain was falling, so as to expose the plaintiffs to great loss; that they therefore sold the wheat September 12, 1882, for defendant's account, and notified him thereof. Then follows an averment that, October 7th, the plaintiffs tendered the wheat to defendant which he refused to accept.

As in this count there is no averment that the wheat was ordered to be purchased, or that it was purchased on the board of trade, or that it was purchased subject to any special conditions, the ordinary rules of purchase and sale must apply, the presumption being, in the absence of proof to the contrary, that payment was to be made simultaneously with the delivery of the wheat at the time agreed upon for such delivery. Benjamin on Sales, Sec. 592. Here the order was to buy wheat to be delivered in October, and the defendant could not be required to accept and pay for it in September. The plaintiffs having accepted the order and acted upon it, it became a contract between the parties, and the plaintiffs could not put the defendant in default by tendering the wheat and demanding payment before the time specified in the contract. Moreover, the allegations in this count are wholly inconsistent with each other, the pleader first alleging that the plaintiffs closed out the deal in September, by selling the wheat to a third party, and then that the plaintiffs tendered it to the defendant October 7th thereafter, of which latter allegation, however, the plaintiffs offered no proof.

The plaintiffs' first instruction was as follows: "If the jury believe from the evidence that the plaintiffs, at the request and upon the order of the defendant, actually bought 5,000 bushels of grain for the defendant, to be delivered in October following, and made themselves liable therefor, and

held warehouse receipts therefor, and that it was understood and agreed by and between the parties at, or subsequent to the purchase, that the defendant should pay to the plaintiffs, sums sufficient to keep the plaintiffs harmless by reason of any fall in the price of the grain, if it became necessary, and that there was, in fact, a decline in the value of such grain, and plaintiffs notified defendant of that fact, and called for the payment of such margins, and that he failed and refused to make such payment, then the plaintiffs had a right to make such a sale of the grain to save themselves harmless, and if a loss was thereby incurred by them, then the defendant became liable to make this loss good, and the jury should find for the plaintiffs."

This instruction is erroneous in three particulars. First, it is not based on the evidence; as has already been seen, there was no proof of an agreement, either express or implied, to pay margins. But secondly, if it were conceded that the order to buy the wheat is to be taken as qualified by a custom on the board of trade, and that by such custom the plaintiffs were authorized to close out the deal by selling the wheat, it was indispensable to the fixing of the amount of the loss that the plaintiffs should sell the wheat and thereby ascertain the difference between the buying and selling price. The instruction fails to embrace a sale as a part of its hypothesis, but bases a liability upon a mere right to sell. Again, the instruction fails to properly state the measure of damages. The jury were told that they should find such sum as would make good plaintiffs' loss, thus leaving it to the jury to judge as to what were proper elements of damages, and allowing them to enter the field of speculation and conjecture. Such an instruction is vicious and improper.

For the reasons above indicated, the judgment of the court below is reversed, and the cause remanded for a new trial. .

Reversed and remanded.