## Alonzo La Porte v. Nettie Wallace.

1. MARRIAGE CONTRACT—*Instructions Leaving to the Jury the Right to Determine What is a Legal Cause for Refusing to Perform.*—Where, in an action against a man for breach of promise of marriage, defendant admits the promise and the breach, and justifies himself because of the unchastity and bad reputation for chastity of plaintiff, unknown to him at the time of the promise, it is error to instruct the jury to find for plaintiff unless defendant had " a legal cause " for refusing to carry out the marriage contract, as this leaves the jury to determine what is a legal cause.

2. SAME—*Instructions as to the Measure of Damages.*—In such a suit compensation is the measure of damages unless matter in aggravation of damages appears, and where no instruction states the measure of damages, it is error to instruct the jury that if they find for plaintiff, to award her such damages as, under the instructions and evidence, they believe she is justly entitled to, as such instruction permits the jury to give punitive damages.

3. SAME—*Want of Chastity as a Defense.*—Where there is evidence that plaintiff had been unchaste years prior to the engagement, and that defendant did not know it when the promise was made, it is error to instruct the jury to find for plaintiff if defendant has failed to prove " that plaintiff is not a chaste and virtuous woman," for defendant had a right to withdraw from the engagement if she had previously been unchaste, and he did not know it when he made the promise, even though she afterward reformed, and had become a chaste and virtuous woman.

Assumpsit, for a breach of a marriage contract. Appeal from the Circuit Court of Lee County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the April term, 1900. Reversed and remanded. Opinion filed June 8, 1900.

C. F. PRESTON and MORRISON & BETHEA, attorneys for appellant.

The defendant may show the bad character of the plaintiff if it appears that her character was unknown to him at the time of the promise, and this either in bar or in mitigation of damages. Butler v. Eschleman, 18 Ill. 44; Burnett v. Simpkins, 24 Ill. 264; Kantzler v. Grant, 2 Ill. App. 236; Doubet v. Kirkman, 15 Ill. App. 622; Storch v. Griffin, 77 Pa. St. 504; Denslow v. Van Horn, 16 Iowa, 476.

If the woman was of bad character at the time of the contract, and that was unknown to the defendant, the verdict should be in his favor. If the plaintiff, after the promise, had prostituted her person to any person other than the defendant, she thereby discharged the defendant. Boynton v. Kellogg, 3 Mass. 189.

The defendant is not bound to give his reasons to the woman whom he has promised to marry for failing to carry out the contract of marriage, and if he does, he may urge other valid defenses on the trial. He may interpose any valid defense that he has, whether he places his refusal to marry on that ground or not. Kantzler v. Grant, 2 Ill. App. 236.

PAYSON & KESSLER and R. S. FARRAND, attorneys for appellee.

If the lack of virtue is relied on to absolve the defendant from the fulfillment of his contract, his knowledge of that fact must have been acquired after entering into the agreement, and the defendant must have terminated the engagement immediately upon being apprised of the truth. Burnett v. Simpkins, 24 Ill. 265.

If the defendant attempts to prove that the plaintiff was a lewd or base woman, or was of immoral or bad character, and fails to establish and prove the same, then said charge and failure on the part of the defendant may be taken into consideration in aggravation of damages. Blackburn v. Mann, 85 Ill. 222, 226; Fidler v. McKinley, 21 Ill. 313, 315; Sloan v. Petrie, 15 Ill. 425; Beasley v. Meigs, 16 Ill. 139; Spencer v. McMasters, 16 Ill. 405; Thomas v. Dunaway, 30 Ill. 373, 388; Harbison v. Shook, 41 Ill. 141, 147.

The moral worth of the parties, their social position and standing in the community, and a great variety of other circumstances and facts, must necessarily be, and generally are considered by the jury in estimating damages, and it is not till the result of the deliberation of the jury shocks the understanding, and leaves no doubt of their prejudice or passion, that courts find themselves compelled to inter-

pose in this kind of a case.  Fidler v. McKinley, 21 Ill. 315, 316.

MR. JUSTICE DIBELL delivered the opinion of the court.

This is an action for breach of promise of marriage brought by Nettie Wallace against Alonzo La Porte.  Defendant filed three pleas, each of which admitted the promise and the refusal to perform it.  The first plea set up as an excuse that before and at the time of making the promise plaintiff was not a chaste and virtuous woman; that defendant did not then know that fact but believed her a chaste and virtuous woman; that afterward he learned she was not a chaste and virtuous woman, and immediately thereafter, and by reason thereof, he refused to marry her. The second plea made substantially the same averments, and further that before the promise, and without defendant's knowledge, plaintiff had sexual intercourse with one John Baker; that after the promise defendant first learned thereof, and by reason thereof immediately refused to marry plaintiff.  The third plea averred that at the time of the promise he believed plaintiff a person of good character and of good reputation for chastity and that she had never had carnal knowledge of any man, but after the promise he learned she was not a person of good character and of good reputation for chastity, and she had before then had carnal knowledge of men not the defendant, and thereupon he refused to marry her.  These pleas were traversed by replications; defendant was given the opening and closing to the jury; and plaintiff obtained a verdict and a judgment for $3,000, from which defendant appeals.

At the trial in January, 1900, plaintiff was twenty-nine and defendant seventy-two years of age.  She had been a domestic and at the time of the engagement was a dressmaker.  He was the owner of a large property, and the father of a family of grown-up children by a former wife. The intimate acquaintance between plaintiff and defendant began in 1898, and the promise to marry was made in that year.  The refusal to marry was in 1899.  Defendant proved by fourteen witnesses that the general reputation of plaint-

iff for chastity in the community in which she lived was bad, and by most of them that it had been bad since 1891. Defendant testified he knew nothing of this when he promised to marry her. No effort was made by plaintiff to support her general reputation. There was direct evidence that plaintiff committed adultery with Baker in 1891, and corroborating circumstances were shown. There was also evidence of inexcusably loose and careless conduct with Baker and other men, with abundant opportunity to repeat the offense in 1898, after plaintiff became engaged to defendant. There was evidence in denial of these charges. When the entire record is considered there is an apparently clear preponderance against plaintiff upon these subjects. If no errors of law had intervened, we should be reluctant to permit a judgment for plaintiff to stand.

The seventh instruction given for plaintiff said :

" The burden of proof is upon the defendant to show that he had a legal ground for failing or refusing to carry out such marriage contract; and unless you believe from the preponderance of the evidence that he had a legal cause for refusing to carry out said marriage contract, then you should find the issues for the plaintiff."

This left it to the jury to determine what was a legal cause for refusing to marry plaintiff. That was a question of law to be decided by the trial judge by proper instructions, and not a question of fact for the jury. In Mitchell v. Fond du Lac, 61 Ill. 174, an instruction submitted to the jury the question whether E. F. " was a pauper for whose support the defendant was legally liable, or for whose support the defendant had, by its proper officers, contracted to pay." This was held to erroneously submit to the jury two questions of law—first, what creates the legal liability of a town to support a pauper, and second, who is the proper officer to make a binding contract on the part of a town. In Byers v. Thompson, 66 Ill. 421, the jury was instructed that if they believed from the evidence that plaintiff had done certain work on his father's farm, and had not been paid therefor, and that he is lawfully entitled to recover therefor, then they should find for plaintiff. It was held error to leave it

to the jury to say whether plaintiff was lawfully entitled to recover, and that the court should have given the law to the jury.   In Henderson v. Henderson, 88 Ill. 248, it was held that an instruction which left the jury to find from the evidence whether plaintiff was entitled to a separation from her husband, permitted the jury to determine, on their own notions of right and wrong, whether a divorce should be granted, and was "inherently vicious."   In Austine v. People, 110 Ill. 248, a prosecution for rape, the trial court gave instructions as to the legal presumption arising from certain alleged conduct of the prosecutrix, adding the words "unless there was no good excuse."   The court said :

"The words 'good excuse' can only mean 'legal excuse,' and 'legal excuse' presents a question of law.   The court should have added, instead of the words 'good excuse' if modification was deemed necessary, what in law, in the particular instances, constitutes ' legal excuse,' leaving the jury to find whether the requisite facts were proved.   But we do not think the jury should be left to find that a party did or did not have a 'good excuse,' for doing or omitting to do an act, without any direction as to what in law constitutes a 'good excuse.' "   Pennsylvania Co. v. Frana, 13 Ill. App. 91; McGinnis v. Berven, 16 Ill. App. 354.

Plaintiff asserts that the eighth instruction given at defendant's request contains the same error, and therefore he can not complain.   The point of that instruction was that a man when breaking a promise to marry is not bound to give the woman his reasons for doing so, and it concluded, "and if she sues him for a breach of the contract, he may on the trial interpose any matter which in the law amounts to a valid defense," meaning, obviously, regardless of whether he has named that reason to her.   The instruction does not direct the jury to determine what is a valid defense, nor what verdict to render if a valid defense is proved, and it does not submit a question of law to the jury, but means that defendant is not prevented from taking advantage of any valid defense that exists merely because he did not name it to plaintiff when he notified her he would not fulfill the marriage contract.

By the second instruction for plaintiff the jury were told

if they found for plaintiff they should "assess her damages at such sum as, under the instructions and from all the evidence, you believe she is justly entitled to." This action is given as an indemnity to the injured party for the loss she has sustained, and embraces injury to the feelings, affections and wounded pride, as well as the loss of marriage, and no fixed measure of damages can be laid down; and the jury, if not actuated by prejudice, passion or corruption, exercise a very wide discretion as to the amount of compensation to be awarded. (Sedgwick on Measure of Damages, 5th Ed., 228, 421.) Yet they are restricted to compensation, unless matter in aggravation of damages appears. There was proof here which might aggravate, and other proof which might mitigate the damages. There was evidence in this case both of the bad character of plaintiff, unknown to the defendant when the engagement was made, and of indelicate conduct toward other men after the engagement, and such evidence may be considered not only in bar of the action but also in mitigation of damages. (Butler v. Eschleman, 18 Ill. 44; Sedgwick on Measure of Damages, 423; 18 Central Law Journal, 446.) An instruction was given that if defendant attempted to prove plaintiff a lewd woman and of immoral character, and failed to prove such charge by a preponderance of the evidence, and if the jury found from the evidence such charge was not made in good faith, or was made without any reasonable hope or expectation of establishing it, then such charge might be considered by the jury in aggravation of damages. But there was no instruction telling the jury that, unless matter in aggravation of damages appeared, compensation was the rule to govern the jury in determining what sum to award plaintiff. In the absence of any instruction indicating compensation as the measure of damages, the second instruction would be likely to be understood by the jury as permitting them to award punitive damages in any event, if they found for plaintiff. In Keightlinger v. Egan, 65 Ill. 235, an action on the case, the court said of an instruction :

La Porte v. Wallace.

" The instruction was wrong, upon the point of damages, in telling the jury they might find for the plaintiff such damages as in their judgment from the evidence in this case the plaintiff ought to recover.    This left the jury free scope to give such damages as, according to their individual notions of right and wrong, they might think the plaintiff ought to recover, unguided by any legal rule of damages, and without regard to the damages sustained.    It was not a case, upon the evidence, for the giving of exemplary damages; yet the instruction left the jury at liberty to give any amount of punitive damages they might have thought the plaintiff ought to recover."

In Waldron v. Marcier, 85 Ill. 550, it was held error to direct the jury, if they found for plaintiff, to allow such damages as they believed from the evidence she was entitled to.    "It should have been such damages as she had sustained, and not have given the jury the wide latitude of allowing her such damages as they might deem she was entitled to."    In U. S. Y. & T. Co. v. Monaghan, 13 Ill. App. 148, an instruction which directed the jury, if they found for plaintiff, to " assess the plaintiff's damages at whatever sum the evidence would sanction," was condemned because it embodied no rule of damages, but left the whole sum to the unlimited discretion of the jury, when it should have been limited to just compensation for the injury sustained. In Ayer v. Mead, 13 Ill. App. 625, an instruction which told the jury to award such sum as would make good plaintiff's loss, was held bad because it left it to the jury to judge what were proper elements of damages, instead of stating the measure of damages.    (James v. Johnson, 12 Ill. App. 286; F. W. & I. Co. v. Collins, 53 Ill. App. 29; I. C. R. R. Co. v. Creighton, 53 Ill. App 45; City of Dixon v. Scott, 74 Ill. App. 277.)    A similar instruction received partial approval in St. L., A. & T. H. R. Co. v. Odum, 156 Ill. 78, but the objection here made was not there raised or discussed, namely, that it permits an award of punitive damages, regardless of whether the evidence justified punitive damages, and without telling the jury what facts would, and what facts would not, authorize punitive damages.    In that case the Appellate Court had found, and

therefore settled conclusively, that the damages awarded were not excessive.

The second instruction was erroneous in another respect. It told the jury that " if defendant has failed to prove by a preponderance of the evidence that plaintiff is not a chaste and virtuous woman, then under the law you should find in her favor." A witness testified he saw plaintiff commit adultery in 1891. Defendant testified he had never heard of it when he became engaged to plaintiff. Under the law, when he learned of that fact, if it was true, he had a right to withdraw from the engagement, even if plaintiff had reformed and had become a chaste and virtuous woman; while under this instruction defendant was not excused from marriage unless he proved by a preponderance of the evidence that at the very time of the trial plaintiff was not a chaste and virtuous woman.

The judgment is reversed and the cause remanded.