## Richard Boggs by J. A. Boggs, Appellee, v. Iowa Central Railway Company, Appellant.

### Gen. No. 5,969.

1. RAILROADS, § 735*—*when evidence warrants finding of negligence in backing train over crossing.* In an action by a driver of an automobile for injuries sustained in a collision with defendant's railway cars at a street crossing, evidence *held* sufficient to warrant a finding that defendant was guilty of negligence in the manner in which the train was operated, where the facts showed that a cut of freight cars were being backed over the crossing and that a brakeman on the first car was unable to signal the engineer to stop on account of a "crook" in the train.

2. RAILROADS, § 759*—*when contributory negligence of driver of automobile in approaching crossing question of fact.* In an action by a driver of an automobile for injuries received in a collision with railway cars at a street crossing, *held* that the question whether the plaintiff exercised the necessary degree of care while approaching and going upon the crossing was a question of fact for the jury.

3. RAILROADS, § 709*—*when evidence of character of injuries of persons accompanying plaintiff admissible.* In an action against a railroad company for injuries received by the driver of an automobile in a collision with defendant's cars at a public crossing, testimony of other occupants of the automobile as to the character of the injuries sustained by them, *held* admissible to show the amount of force exercised at the time of the accident and the conditions surrounding the accident.

4. APPEAL AND ERROR, § 1245*—*when defendant cannot complain of admission of evidence.* Where in an action by an automobile driver for injuries received in a collision with railroad cars at a public crossing, the court admitted the testimony of other occupants of the automobile as to the character of their injuries, *held* that the defendant Railway Company could not complain of the admission of such evidence where it had previously asked questions bearing on the matter in the cross-examination of plaintiff's witnesses.

5. EVIDENCE, § 277*—*when photoghaphs of scene of accident admissible.* In an action against a railroad company to recover for injuries received by plaintiff in a collision between an automobile and a cut of freight cars at a public crossing, refusal to admit in evidence a photograph of the scene of the accident, taken from a place where defendant claims the plaintiff had a view

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

of the crossing, and offered for the purpose of aiding the jury to decide whether a car on the track would appear to be standing still or moving, *held* error.

6. INFANTS, § 52*—*when instruction may allow recovery for loss of time and earnings during minority.* In a suit by a minor for personal injuries, an instruction given at the request of plaintiff *held* not erroneous, for the reason that it might be understood to allow plaintiff to recover for loss of his time and his earnings during his minority, where the declaration was framed to recover for such loss and the suit was in the name of his father as next friend.

7. DAMAGES, § 209*—*when instruction as to amount of recovery erroneous.* An instruction telling the jury to assess the plaintiff's damages "in such sum as you may think him justly entitled to under the evidence in this case, taking into consideration the character of his injury as the same is shown by the evidence," *held* erroneous for the reason it left the jury unguided by any legal rule of damages.

Appeal from the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the April term, 1914. Reversed and remanded. Opinion filed July 31, 1914.

BROWN & SOULE, for appellant.

HANNA & LAUDER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Third street, in the city of Monmouth, in Warren county, runs north and south and crosses the right of way and three tracks of the Iowa Central Railway Company, the course of which at that place is east and west. In the afternoon of Sunday, July 30, 1911, Richard Boggs, then sixteen years old, was driving an automobile south on Third street towards the tracks of said railway company and had with him in the automobile six other people. While the automobile was on the railroad tracks, above mentioned, it was struck by a freight car, propelled by a switch engine of the Iowa Central Railway Company. The automobile was demolished and Richard Boggs was injured. He brought suit by his next friend against the railway

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

company to recover damages for said injuries, and had a verdict and a judgment for four thousand five hundred dollars, from which the defendant below appeals.

The declaration consists of three original counts and two additional counts and each alleges due care and caution on the part of appellee and negligence on the part of appellant, and that negligence is stated to be in running its engine and cars at a dangerous rate of speed, in failing to keep a proper watch for persons about to pass over said crossings, in failing to have a servant stationed on said cars, in failing to give such signals as would warn persons of the approach of engines and cars, and in failing to have a servant in such a position that he might signal the engineer to stop. A plea of the general issue was filed by appellant.

The crossing of the railroad tracks by Third street was a public one which had been in common use for more than thirty years. The railroad tracks run in a straight direction on either side of the highway, and the evidence shows that the car which caused the injury to appellee was not running more than six miles per hour. A cut of cars had been stopped at or near the freight depot of appellee, a short distance west of Third street, for the purpose of entering into a switch, and at that point the foreman in charge of the crew and cars left them and went into the freight depot for the purpose of attending to his regular duties. As soon as the switch had been set, a switch engine, pushing seven or eight cars, proceeded east in charge of the engineer, the fireman and one switchman. This switchman had opened the switch and had caught hold of and jumped on to the first car when it reached him, being a large car of the type known as a "cattle car." This switchman did not ascend to the top of the car but clung to the irons provided for that purpose along its north side. Appellant was driving the automobile,

with six persons besides himself therein, about eight miles per hour. He testifies, as do others riding in the automobile with him at that time, that he and they first saw the head car of that string of cars when the automobile was from seventy-five to one hundred feet from the track and that he had not seen it any sooner because the view was obstructed by trees and standing corn in the lot next to the railroad track. Appellee and some of those with him testified that the cars appeared to be standing still, and that they heard no whistle or bell and saw no smoke of the engine nor any person to warn them that the train was approaching. Appellee testified that as he approached nearer to the railroad tracks he noticed a man hanging on the north side of the first car and waving his left arm; that the car still seemed to him to be standing still, and that he understood that the switchman was motioning him to proceed across the tracks; that he continued to approach the tracks, in the belief that the railroad train was motionless, until he was within a few feet of the track, when the switchman jumped down from the car, called to appellee to stop and waved his arms up and down, giving the emergency signal to the engineer to stop his train. There was what may be termed a "crook" in the train at this time, due to its proceeding from the main track to a switch track, and being still partly on the main track and partly on the curves leading out to the main track and partly on the switch track. Because of this "crook" the switchman was not within the range of vision of the engineer, and to enable the engineer to see his emergency signals the switchman was obliged to and did run to the fence adjoining the right of way. As soon as the engineer saw the emergency signals he put on the full force of the brake and stopped his train within the length of a car or a car and a half. As soon as appellee heard the brakeman calling to him to stop he did so, with the front wheels of his automobile upon the north track,

which was the switch track upon which the train was approaching. He reversed his engine, and the automobile had started to back off from the track when it was struck by the train and demolished. Appellee testified that when the switchman first motioned to him he understood him to be beckoning him to go on over the tracks, and that when he finally heard the switchman's command to stop, he thought the switchman meant that there was a train approaching on one of the other tracks.

The evidence shows that the switching crew in charge of the train which caused the injury ordinarily consisted of five men, the foreman, two brakemen and the engineer and fireman. As stated above, the foreman had gone into the freight depot and was not on or near the train at the time of the accident. One of the brakemen was either laying off or had been temporarily suspended. The engineer and fireman were in a cab at the other end of the train on a crooked track and the other brakeman was the only person upon the cars and near the head of the train. The brakes by which the train could be stopped were all controlled by the engineer in his cab, and though the brakeman on the end of the train might discover some reason for stopping the train, he would be powerless to do so until his signals could be so made as to be observed by the engineer. The foreman and all of the other members of this switching crew must be presumed to have known that this train was about to approach a public crossing, which was in general use by the public. In our judgment the evidence warranted the jury in finding that appellant was guilty of negligence in the manner in which this train was operated. If there had been two brakemen on these cars, one at the head end and the other on the car near the engine, it seems entirely probable that the first signal by the head brakeman would have been passed on to the engineer so quickly that this train would have been

stopped without striking the automobile. Especially was such a disposition of the brakemen on the train essential when the train was obliged to pass over a crooked piece of track in passing into this switch. The question whether or not appellee exercised the necessary degree of care while approaching and going upon the crossing was a question of fact, which was within the province of the jury to decide. The jury by their verdict have found that appellee was in the exercise of ordinary care and the trial judge has approved that conclusion, and we should not be disposed to disturb it if the record were otherwise free from error.

Each one of the occupants of the automobile was injured at the same time that appellee received the injuries here complained of, and on the trial of this cause in the court below each one of them was questioned as to the character of the injuries so sustained by them. To this line of questions appellant objected and here insists that the evidence was improperly admitted, that when admitted it served to prejudice the jury against appellant, and that its admission constituted reversible error. In ruling upon the objections of appellant to this testimony, the court below stated that it would be admitted only for the purpose of showing the amount of force exercised at the time and the conditions surrounding the accident, and we do not consider the court's action in that respect erroneous. Testimony of this kind has been admitted by the courts of this State. *Richardson v. Nelson,* 221 Ill. 254; *West Chicago St. R. Co. v. Kennelly,* 170 Ill. 508. Again, appellant is hardly in a position to complain of the admission of the testimony regarding the injuries sustained by the other occupants of the automobile, for the reason that the first questions bearing on that matter were asked of one of appellee's witnesses by appellant on cross-examination in an apparent effort to determine how and to what extent the other occupants of the automobile were injured.

Appellant caused two photographs of the place and surroundings to be taken and, after examining the photographer who took them and who testified that they were correct representations of the objects shown, offered them in evidence as Exhibits 3 and 4. Exhibit 4 was admitted, but the court sustained an objection to Exhibit 3. Before this photograph was taken, appellant placed a freight car at a certain distance west of said crossing, and caused the photographer to place his instrument a certain distance north of the crossing, and these places corresponded with proof by appellant as to the places where the head freight car was at a certain instant shortly before the collision and where appellee then was in the automobile. Appellee had testified that the freight car appeared to him to be standing still; and the photograph, Exhibit 3, tended to give the jury a much better understanding of what the situation was at that time, if appellant's testimony was believed, than the oral evidence would, and was calculated to aid the jury to decide whether, from the place where appellee then was, a freight car where that car then was would appear to be standing still, when in fact it was moving. These photographs were taken the second day after the accident, and there is no claim that the shrubbery and intervening growing corn had been changed. It is true that the photograph did not wholly present the situation to which appellee's witnesses testified, but we do not consider that a sufficient objection. It tended to illustrate the case as made by the proofs introduced by appellant. We think Exhibit 3 should have been admitted, under the rules laid down in *Lake Erie & W. R. Co. v. Wilson,* 189 Ill. 89.

Complaint is made of the first instruction given at the request of appellee. This instruction might have been understood to permit appellee to recover for his loss of time and earnings during his minority, whereas these belonged to his father. Appellee's declaration was framed to recover for such loss, and the suit was

in his name by his father as his next friend. For that reason only the instruction was not erroneous. *American Car & Foundry Co. v. Hill,* 226 Ill. 227; *Orr v. Wahlfeld Mfg. Co.,* 179 Ill. App. 235.

The second instruction given at the request of appellee told the jury that under the circumstances therein stated they should assess appellee's damages "in such sum as you may think him justly entitled to under the evidence in this case, taking into consideration the character of his injury as the same is shown by the evidence."

"This left the jury free scope to give such damages as, according to their individual notions of right and wrong, they might think the plaintiff ought to recover, unguided by any legal rule of damages." *Keightlinger v. Egan,* 65 Ill. 235. We collected the authorities adverse to such an instruction in *La Porte v. Wallace,* 89 Ill. App. 517. Later cases are *Cleveland, C., C. & St. L. Ry. Co. v. Jenkins,* 174 Ill. 398, where an instruction to fix plaintiff's damages "at such sum as you think right," was condemned; *Illinois Cent. R. Co. v. Johnson,* 221 Ill. 42, where a given instruction authorized the jury to fix plaintiff's damages "at such reasonable sum as she may be entitled to recover, under all the facts and circumstances proved in the case, not exceeding $5,000," and this was held erroneous because it did not limit the jury to compensation for pecuniary injury or loss; and *Fowler v. Chicago & E. I. R. Co.,* 234 Ill. 619, where it is implied that the jury should be limited to the amount of actual pecuniary damages sustained, as shown by the evidence.

This case is close upon the questions whether appellee was guilty of contributory negligence and whether the damages awarded are excessive, and we therefore conclude that for the error in giving the second instruction and in refusing to admit in evidence Exhibit 3, the cause should be submitted to another jury. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*