KERNAHAN v. WALLACE.

1. BROKERS—STOCK EXCHANGE RULES.

Transaction involving unlisted stock is not governed by rules of stock exchange.

2. SAME—WHEN STOCK EXCHANGE RULES NOT BINDING ON CUSTOMER.

While rules of stock exchange are binding on its members, they do not affect legal rights of customer purchasing through member, where customer has no knowledge or notice of rules and has not contracted in reference thereto.

3. SAME—UNLISTED STOCK—NONTRANSFERABLE STOCK—RESCISSION OF PURCHASE ORDER.

Where broker delivered to customer unlisted nontransferable stock, latter had right, on returning stock, to cancel or rescind order to purchase.

4. SAME—RESCISSION—RIGHT TO RETURN OF PURCHASE MONEY.
   Where customer, on returning unlisted nontransferable stock
   to broker, rescinded order to purchase, and notified him not
   to purchase any other stock, customer was entitled to return
   of funds intrusted to broker; and latter had no right there-
   after to purchase transferable, although, had rules of stock
   exchange been applicable, he might have had such right.

Appeal from Wayne; Ferguson (Homer), J. Submitted April 14, 1933. (Docket No. 88, Calendar No. 37,153.) Decided June 5, 1933. Rehearing denied June 29, 1933.

Assumpsit by Robert B. Kernahan against Alfred W. Wallace and others to recover sums paid incident to purchases of bank stock. Judgment for plaintiff. Defendants appeal. Affirmed.

*Fildew & DeGree,* for plaintiff.

*Schueler & Freud* (*Leo Mellen,* of counsel), for defendants.

NORTH, J. Plaintiff brought suit against defendants, who are stockbrokers, for money paid to them incident to an order to purchase stock for plaintiff. Judgment was adverse to defendants, and they have appealed.

On the 9th of March, 1931, plaintiff, through Mr. Coker, an employee of defendants, placed with the latter an order for the purchase of 200 shares of stock of the American State Bank at $35 or less. This order was forthwith communicated to defendants' representative at the Detroit Stock Exchange, and 200 shares of the stock were purchased for plaintiff's account. On the following day plaintiff received a bill for the purchase, the stock was delivered to him between two and three o'clock in the after-

noon, and he paid therefor on that date $7,100, the $100 being defendants' commission. On the morning of March 12th plaintiff attempted to have the stock, which then stood in the name of Joel Stockard & Company, transferred to his name by the American State Bank. He was informed by the bank's transfer clerk that this stock in the name of Joel Stockard & Company could not be transferred because the affairs of that company had been placed in the hands of a receiver, and Joel Stockard & Company was heavily indebted to the bank. This indebtedness was an incumbrance on the stock. A receiver for Joel Stockard & Company had been appointed in the circuit court of Wayne county about one o'clock in the afternoon of March 9th. Plaintiff immediately returned the stock to defendants and demanded repayment. Plaintiff claims that he was thereupon informed by Mr. Coker, that the money would be repaid, but this is denied by defendants.

In behalf of defendants, it is urged that they were acting merely as brokers in the execution of plaintiff's order for the purchase of this stock, and that if plaintiff had the right to rescind because of the nontransferability of the stock and to recover the money he had paid therefor, such right of action was not against defendants, but, instead, arises out of the contract for the purchase and sale of the stock, and is therefore a right of action against the vendor in such transaction. As bearing upon this defense, these further facts are relevant: The defendant brokers were members of the Detroit Stock Exchange, operating as Wallace & Company, and the stock of the American State Bank had formerly been listed on this exchange, but on the second of March, 1921, at the request of the bank's directors, its stock was withdrawn from listing on the Detroit exchange. One of the rules of the exchange pro-

hibited quoting or trading on the floor of the exchange in securities not admitted to listing or trading on the exchange. Notwithstanding this rule regulation, the stock in question was obtained by the representative of defendant brokers in what may be termed a private transaction with the selling broker at the exchange, and the delivery and payment for the stock was accomplished in the regular course of clearing through the Detroit Stock Exchange. It is defendants' claim that, in obtaining the stock in this manner, they advanced to the selling broker the purchase price, and plaintiff's payment to defendants was merely reimbursing them for such advancement and payment of their commission. As affecting the rights of the respective parties touching delivery of the stock, defendants rely upon section 17, article V, of the exchange rules, which provides:

"Where improper delivery has been made to a member, that member shall have the right to not only demand proper delivery, but shall also have the right to demand from the seller the return of the purchase price of such securities pending the correction of delivery. The seller shall immediately return such purchase price on demand. Nothing in this ruling, however, shall be construed to warrant the purchaser in refusing to accept such delivery when it shall have been corrected."

It is defendants' claim that, acting in accordance with the provisions of the rule, the nontransferable stock was returned by them to the selling broker, and that defendants later received from such selling broker in lieu thereof a corresponding amount of the stock of the American State Bank which was transferable.

Following plaintiff's return of the stock to defendants, and on the afternoon of March 12th, plaintiff served written notice upon defendants, calling

their attention to the fact that he had returned the stock with instructions not to purchase any other stock in his behalf, and advising them that he canceled all orders for purchase of the stock, and required repayment of the $7,000 which defendants had received from him. After the receipt of this written communication, defendants borrowed the necessary amount of American State Bank stock, and made tender thereof to plaintiff's attorneys, who refused to accept the same. Defendants also sought to make a tender to plaintiff, but were unable to do so. However, at the trial, plaintiff testified that even if the attempted tender had been made, he would have refused to accept it.

Without reviewing other details of the testimony, it may be said it conclusively appears from the record that the stock tendered by defendants to plaintiff in the first instance was not a fulfillment of the order to purchase which plaintiff had placed with defendants; and, before defendants purchased other stock in fulfillment of plaintiff's order or any further tender of delivery was made, plaintiff canceled his order for the purchase. If the transaction had been one in which defendants were the vendors and plaintiff the vendee, there could be no question of plaintiff's right to so cancel the order. The question presented is whether the legal aspect of the case is altered by reason of defendants' claim that they were acting as plaintiff's brokers and as members of the Detroit Stock Exchange, and as such were acting under and governed by the rules thereof. We think the circuit judge was correct in his holding that, since this transaction involved an unlisted stock, it was not governed by the rules of the exchange. Further, there is an abundance of authority that while the rules of a stock exchange are bind-

ing upon the members of the exchange, such rules do not affect the legal rights of a customer who is purchasing through a member of the exchange and who does not have knowledge or notice of the rules and has not contracted in reference thereto.

"Persons who are not members of the exchange are not bound by its laws and customs, unless they contract with reference to them." 17 Cyc. p. 852.

"Usage and custom (of stock exchange) cannot be proved to contravene a rule of law, or to alter or contradict the express or implied terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof." *Hopper* v. *Sage,* 112 N. Y. 530 (20 N. E. 350, 8 Am. St. Rep. 771).

See, also, *Ford* v. *Snook,* 205 App. Div. 194 (199 N. Y. Supp. 630); *Ayer* v. *Mead,* 13 Ill. App. 625; and Meyer on Law of Stockbrokers and Stock Exchanges, p. 159.

In this connection, it may be noted that when Mr. Coker approached plaintiff on this occasion relative to investing in the American State Bank stock, in reply to plaintiff's inquiry as to why the stock was for sale, Mr. Coker said in substance to plaintiff, "I have got a party who wants to sell and has got to sell quick;" and added, "I don't think my party will take that," meaning $35 or less. By this statement defendants' agent clearly conveyed to plaintiff the impression, if not the definite information, that this stock was to be acquired direct from the owner rather than by purchase on the stock exchange. The record fully sustains the holding of the trial judge that the respective rights and liabilities of the parties to this suit are not affected by the rules and regulations of the exchange.

That it was defendants' duty to secure for plaintiff transferable stock is not questioned. The stock delivered to plaintiff was not transferable, and, upon returning it to defendants, plaintiff had the right to cancel or rescind his order for the purchase.

"If the execution of the order is at variance with the customer's instructions or in contravention to the broker's legal duties, the customer may, at his election, treat it as a nullity, and regard his account as being in the same state as if there had been no execution at all." Meyer on Law of Stockbrokers and Stock Exchanges, p. 549.

Plaintiff exercised his right of rescission, and notified defendants "not to purchase any other stock in my behalf." The attempted transaction was not only revoked, but defendants' agency was also terminated, and plaintiff was entitled to return of the funds intrusted to them. It was so adjudged in the circuit court.

"A customer is not liable to his broker for any matters arising out of an order which has been given but not executed. If he has paid the broker for securities which he has ordered bought but which have not been bought, he may recover back his payment from the broker." Meyer on Law of Stockbrokers and Stock Exchanges, p. 548.

See, also, *Howe, Snow, Corrigan & Bertles* v. *Vander Veen*, 223 Mich. 572.

In view of our holding above noted, we will not review the circuit judge's finding that plaintiff is also entitled to recover on the ground that defendants, in fraud of plaintiff's right, made a secret profit on the transaction here involved.

The judgment is affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.