# Chicago City Railway Company v. James Reddick, Administrator.

## Gen. No. 13,641.

1. NEGLIGENCE—*considerations which enter into determination of question of, as one of fact, where child of tender years is injured while attempting to cross street car tracks.* Where a child of tender years is injured by a motor car while attempting to cross street car tracks, very strong elements essential to the solution of the question of negligence are, the position and the distance of the car from the child when he first started to cross the track, the attention or lack of attention of the motorman in control of the car at that time, whether or not the motorman saw the child as soon as he might in the exercise of due care or applied as he should the mechanism of the car in an attempt to arrest its progress and bring it to a stop before striking the child, whether, in fact, he used sand on the rails, and if he did use sand, did he do so in apt time, in the exercise of due diligence.

2. NEGLIGENCE—*what does not relieve from charge of, where a child of tender years is injured while attempting to cross a street car track.* Whether or not a gong on a motor car is sounded at the time of an accident is immaterial in a case of a child of tender years injured or killed while attempting to cross a street car track.

3. DAMAGES—*how amount of, determined in death case, where the plaintiff's intestate was a child of tender years.* The determination of the amount of damages to be awarded in an action for death caused by wrongful act is left to the determination of the jury, and where the plaintiff's intestate is a child of tender years with the infinite possibilities of life and opportunity before him, the discretion exercised by the jury is liberally considered on review.

4. ARGUMENTS OF COUNSEL—*what ground for reversal.* Arguments of counsel which seek to inflame the passions and prejudices of a jury by references to matters of common knowledge which are outside of the issue, are ground for reversal where harm may fairly be inferred to have resulted.

5. ARGUMENTS OF COUNSEL—*what ground for reversal.* Remarks of counsel, upon the question of damages, as follows, held improper, and to constitute ground for reversal.

"When it comes to a question of damages, Mr. Duncan touches upon those and says that if you should find for the plaintiff in the case, you should limit the damages. * * * The law fixes a limit. It allows the recovery of ten thousand dollars in a case where death of one is wrongfully and negligently caused by another."

Chicago City Ry. Co. v. Reddick.

6. PRACTCE—*when impropriety in permitting jury to take elimi-nated counts upon retirement not subject to review.* It is not error *per se* to allow the jury to take with them upon their retirement the declaration in the cause, although the better practice is not to permit them so to do. It is error, however, to permit the jury so to take with them eliminated counts, but such error is not subject to review in the absence of the question being raised in the trial court at the time of the delivery of such eliminated counts to the jury.

7. INSTRUCTIONS—*when refusal to eliminate count error.* It is error to refuse by instruction to eliminate a count of a declaration from the consideration of the jury where there is no evidence tend-ing to support the averments of such count.

8. INSTRUCTIONS—*must not tender false issues.* An instruction is erroneous which submits a false issue to the consideration of the jury.

9. INSTRUCTIONS—*effect of refusing abstract proposition of law.* It is not error to refuse an instruction which contains only an abstract proposition of law, even though such abstract proposition of law is correctly stated.

10. INSTRUCTIONS—*measure of damages improperly stated.* An instruction given in this case, as follows, held erroneous:

"The court instructs the jury that the law provides that when-ever the death of a person shall be caused by the wrongful act, neglect or default of any person, company or corporation who or which would have been liable if death had not ensued, to the party injured, the administrator or executor of such deceased person may bring a suit against the person, company or corporation whose negli-gence was the cause of death for the benefit of the next of kin of such deceased person. And the law also provides that in such suit or action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injury resulting from such death to the next of kin of such deceased per-son, not exceeding the sum of $10,000."

11. PLEADING—*when averment in declaration that plaintiff's in-testate left next of kin sufficient.* While in actions for death caused by alleged wrongful act it is usual to aver in all the counts of the declaration that the plaintiff's intestate left next of kin, yet it is not necessary so to do. It is sufficient if such averment appears in one count of the declaration.

12. EVIDENCE—*when rules of traction company competent. Held,* that it was not error to admit in evidence the rules of the traction company defendant governing motormen.

13. EVIDENCE—*what competent with respect to arrest of motor-man at the time of accident. Held,* that it was not error to admit proof of the arrest of the motorman at the time of the accident,

but that it was error to refuse to permit evidence to be given as to the cause and reason of such arrest, where such evidence tended to remove the impression which might have been left in the minds of the jury that there was something culpable in the conduct of the motorman at the time of the accident which brought it about.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. BEN M. SMITH, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed March 9, 1908.

WILLIAM J. HYNES, VINCENT J. DUNCAN and C. LEROY BROWN, for appellant.

OSSIAN CAMERON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an action on the case brought under the statute against appellant for negligently causing the death of appellee's intestate, a male child of the immature age of two years. The little boy came to his death by being run over by an electrically propelled car of appellant while it was going west on 59th street near Grove avenue on June 17, 1904. The original declaration, filed February 3, 1905, contained seven counts, in one of which only was contained an averment that the deceased left a father and mother and three sisters surviving him, who were his next of kin. A general demurrer was interposed to the six counts omitting the averment of survivorship, and the general issue filed to the remaining count. The demurrers were sustained and leave given to file an amended declaration. Seven additional counts were filed October 1, 1906, each containing an averment that the deceased boy left next of kin surviving, and one of which set up an ordinance of the Chicago Council, referred to colloquially as the "Fender Ordinance," and averring a violation of it in the equipment of the car which killed the boy. A demurrer was interposed to the seventh additional count, which being sustained, the count was amended upon its face by leave of court. To the re-

maining seven counts the Statute of Limitations was pleaded, to which appellant demurred, and the demurrers being sustained and appellant electing to stand by the pleas, the cause proceeded to trial on the issues thus made. The trial resulted in a verdict against appellant of $10,000, from which appellee remitted $4,000, and after overruling motions for a new trial and in arrest of judgment, the court entered judgment on the verdict of the jury, less the amount of the *remittitur,* for $6,000, to which rulings appellant preserved sufficient exceptions and brings the record to this court for our review.

Twenty-five reasons were filed with the motion for a new trial, and forty separate assignments of error are found endorsed upon the record.

The errors argued as requiring a reversal are restricted to the verdict being contrary to the law and the evidence, excessive damages, improper statements of counsel in argument, in sending the declaration to the jury, in not excluding the fifth count, in eliminating the pleas of the Statute of Limitations, in the exclusion and admission of certain evidence, and erroneous instructions to the jury.

The family of deceased lived in the neighborhood of the place of the accident. The little boy, about five minutes before the accident, left his home, without the knowledge of his mother, and with his sister, a child in the vicinity of four years of age, proceeded onto the south side of 59th street, where they met a four-year-old child of John Murray, an uncle of deceased. When this little group of children were at a point on the south side of 59th street on a line with the east side of Grove avenue, they saw John Murray walking south on Grove avenue toward them. They holloed to him, and the deceased and his sister started to go north across the tracks of appellant with the apparent intention of meeting Mr. Murray. The little girl halted on the east-bound track, but deceased, unconscious of the danger so imminent, kept on running, and when on the west-bound track was picked up by the fender of the car and in some way not altogether clear, his little body was released from

the fender and drawn under the car, which ran over him, causing his death. When the car stopped it was about fifty feet west of Grove avenue. Fifty-ninth street at the point of the accident, and for some distance east and west of that point, is not paved. It is contended that the rails were slippery and in a greasy condition, made so by having been recently sprinkled to allay the dust. A railroad viaduct used by the Rock Island and Lake Shore Railroads passes over 59th street in the vicinity of Lafayette avenue and about 100 feet west of Grove avenue. There is a gradual depression of the street to the east and west of this viaduct, the down grade to the west being steep. As the car approached from the east to descend this grade there were no obstructions visible in the street in the line of the westward progress of the car, either of pedestrians or vehicles. The motorman threw off the power and applied the brakes about 30 feet east of the descent of the grade. The evidence is somewhat conflicting as to how far from the child the car actually was at the time the motorman first saw him, but that the rails were slippery and that the motorman seemed to do all in his power to stop the car in an attempt to avoid striking the deceased, is not seriously contested. That the mechanism of the car was in good order and condition, is the undisputed evidence of the witnesses who had the best means of knowledge in relation thereto. The motorman testifies that when he was unexpectedly confronted with the perilous situation of the deceased, appreciating the fact that an application of the brake would not result in bringing the car to a standstill in time to avoid striking deceased, he applied the reverse and turned on the power in an attempt to set the wheels going in the opposite direction, and says that when the boy was on the fender he used the sand in an effort to counteract the slipperiness of the rails. Some of appellee's witnesses testified that the motorman seemed to be doing all in his power to stop the car.

The verdict, with the exception of one disputed point, seems to us to be manifestly against the clear weight of the evidence. That negligence cannot be imputed to one of the

tender age of deceased is elementary. We think the jury, under the evidence, was warranted in finding that negligence was not imputable to the parents of deceased. But whether or not appellant was guilty of the negligence charged in some one of the counts of the declaration, in not so holding the car in control, in the condition which presented itself at the time of the accident, as to have avoided it, is for the jury to determine. Very strong elements essential to the solution of this question are the position and distance of the car from deceased when he first started to cross the track, and the attention or lack of attention of the motorman in control of the car at that time, and whether or not the motorman saw the deceased as soon as he might in the exercise of due care, or applied, as he should, the mechanism of the car in an attempt to arrest its progress and bring it to a stop before striking the deceased, whether in fact he used sand on the rails, and if he did use sand, did he do so in apt time in the exercise of due diligence. These questions we regard as the prominent factors in dispute, and as to which the evidence is somewhat in conflict.

It is primarily for the jury to find from the evidence whether or not the car was at such a distance from the point where it struck the deceased that it could have been stopped in the exercise of due diligence by the motorman, either before it struck deceased in the first instance, or during the time when the child was on the fender upon which he was carried 40 or 50 feet before he fell to his death. These matters will be pertinent for the consideration of the jury upon another trial.

Whether or not the gong on the car was sounded at the time of the accident is immaterial in the case of so young a child as deceased. It would not serve the purpose of warning so young a child. He had no discretion to exercise nor judgment to which the sound of the gong would appeal.

While the verdict cannot be maintained, for the reasons hereafter more specifically set forth, yet neither the argument nor reasoning of counsel for appellant that it cannot

be maintained because of its claimed excessiveness, appeals to us. Their standard for the measurement of damages is neither supported by the law nor the conditions of hope for reward which may await the diligent and competent citizen, regardless of humble birth, which elsewhere might be a barrier to success and preferment. We have spoken in no uncertain tone on the subject in a nearly parallel case, concerning the amount of damages which may be awarded the next of kin in an action for negligently causing the death of a young boy. In Chicago City Ry. Co. v. Strong, adm'r, 129 Ill. App., 511, we said: "The assessing of damages in this class of cases is not free from difficulty and some uncertainty. It has been decided that such damages cannot be limited to any fixed rules, and must be left largely to the sound discretion of the jury. C. & A. Ry. v. Shannon, 43 Ill., 338. The amount of recovery in this case is the maximum allowed by law when the boy died. He was an ordinary, bright boy, but too young to judge of his final attainments in the 'battle of life.' He was an American youth, and every ambition of life was open to him, and fame and distinction and high place in this free Republic were not barred to him. The country's history is replete with names which shine luminous upon the scroll of fame, who climbed the giddy heights of prominence and usefulness as the reward of strenuous and patriotic endeavor from as humble station in life as that to which the deceased was born. What comfort and financial support he might have been to his next of kin we can never know. What sorrow or charge upon them he might have become is equally denied. Therefore no one may know what actual damage the next of kin may have suffered, and there being no class distinction or advantage of heredity here, all are on an equal plane, and the damages must be admeasured within the limitations of the statute and of necessity what the amount shall be largely rests in the discretion of the jury." These observations are of equal application to the case at bar. The argument of counsel to the contrary comes with ill grace, and is refuted by the history of this country and the attainments

Chicago City Ry. Co. v. Reddick.

of its professional men, financiers, merchants, journalists, inventors and others, to whom the unprecedented growth of our country and its material prosperity is debtor. They led and conquered in the struggle by bursting the bounds of their humble environment.

The authorities cited and discussed in the Strong case, *supra*, are all decisive of the rule as to the admeasurement of damages in this class of cases. Our judgment in the Strong case was affirmed on further review, 230 Ill., 58.

Where the proofs are inharmonious and the right of recovery is a close question by reason of this condition of the evidence, exactness in the rulings of the court on the evidence and instructions and moderation in the conduct of counsel in argument are essential requirements to sustain a verdict thereon resting for its support.

Counsel for appellee in his closing address to the jury was guilty of indulgence in improper remarks of a highly inflammatory character, calculated, as we think, to stir the passions and prejudices of the jury to such an extent that it swayed their deliberations and influenced their verdict to the detriment of appellant.

That the citizens of Chicago have been much perturbed with a so-called "traction problem," affecting all the corporations operating street surface railroads in Chicago, is a matter of common knowledge and current local history. That the systems have been inefficiently operated to the great inconvenience of patrons, is generally believed, whether justly so or not. In judging of the purpose and effect of the improper remarks of counsel, the court cannot disregard the general current of public sentiment in the community on this subject. Its purpose undoubtedly was to appeal to the prejudices of the jury and the result impels us to the conclusion that counsel succeeded in such purpose. The fruit thus unlawfully obtained the court will not allow the offending party to retain. Such is the trend of all the authorities treating of like conditions. These are some of the most objectionable and indiscreet remarks of counsel: "The parents of this child permitted that child to go into

these streets where cars were passing. My God! Are cars so sacred—are cars more sacred than human life? Have we given up all our rights in the streets?" These remarks were so apparently unwarranted that counsel on making them yielded to an objection by withdrawing them. But he was too late; the harm had been done. Neither statement of counsel nor ruling of the court sufficed to correct the evil effect of this and other like language indulged in by counsel. The verdict of the jury evidences its baneful effects on them, and the *remittitur* of four-tenths of its amount by counsel for appellee is a recognition tantamount to an admission that prejudice and passion were ingredients dominating the jury's deliberations. The trial judge also indicated a like opinion by requiring this large *remittitur* as a *sine qua non* to denying the motion for a new trial. Full support for these conclusions is found in Chicago City Ry. Co. v. O'Donnell, 208 Ill., 267; McDonald v. People, 126 *ibid.*, 150; Wabash R. R. v. Billings, 212 *ibid.*, 37.

The case of Chicago City Ry. Co. v. Math, 114 Ill. App., 350, is as to the criticized remarks very similar. The counsel in the Math case said: "If every man, woman or child who ride upon the footboards in Chicago are taking their lives in their hands, and this company can come into court and say 'We are not liable,' then I say the Lord help the men, women and children who ride on them." This court condemned such remarks as improper.

In I. C. R. R. v. Souders, 178 Ill., 585, the court said, as we intend to be understood as holding here: "The withdrawal was after the harm had been done. It would not be safe to establish the rule that after an injury is done a mere withdrawal is sufficient to restore the status, since that would furnish a very convenient method of bringing before the jury improper matters." W. C. St. Ry. v. Kean, 104 Ill. App., 147.

The remarks of counsel to the jury as to the measure of damages and the rulings of the court on the objection of appellant were equally erroneous and prejudicial in a matter most materially affecting the liability of appellant.

Counsel among other things said: "When it comes to a question of damages, Mr. Duncan touches upon those and says that if you should find for the plaintiff in the case, you should limit the damages. The law fixes the limit. It allows the recovery of ten thousand dollars in a case where the death of one is wrongfully and negligently caused by another." Other remarks of a similar tendency were made and ruled as proper by the court over the objection and exception of appellant. In a colloquy between the court and counsel over these objections, in the presence of the jury, the court by the trend of his remarks intimated it as his opinion that appellee's counsel was justified by the law in his argument as to the measure of damages. These rulings were error prejudicial to the rights of appellant. They have been so held in I. C. R. R. Co. v. Souders, *supra,* where the court say: "The injury was severe, but the damages allowed are very large, and the remarks of the court were directed to the subject and likely to affect the amount of the damages. Every one knows the importance juries ordinarily attach to the remarks and opinions of the court, and we think that in this case it would be unjust to overlook them, and that in connection with the conduct of counsel complained of, they require a reversal of the judgment."

While it is not error *per se* to allow the jury to take with them upon their retirement to consider of their verdict the declaration in the case, it is not always the part of wisdom so to do. However, it is a matter which rests largely in the discretion of the court. Still, the jury's possession of the declaration with the sixth and seventh counts, which had been eliminated from the case by the court's instructions, was calculated to prejudice the defense of appellant and counterbalance the action of the court in excluding these counts, which the jury may have either designedly or inadvertently examined and heeded in arriving at their verdict. It is true that the objection made was general, when it should have been specific by designation of the two eliminated counts. The objection was to the declaration as a whole, and as such was unavailing. W. C. St. Ry. v. Buck-

ley, 200 Ill., 264. The court should have afforded an opportunity to have detached the sixth and seventh counts before delivering to the jury a declaration on which the issue joined was submitted.

The court say in Hanchett v. Haas, 219 Ill., 546: "It is insisted that it was error for the court to permit the jury to take the declaration into the jury room upon their retirement. In this there was no reversible error." While yielding our assent to this ruling, we are strongly of the opinion that in furtherance of justice it is by far the better practice not to allow the declaration to be taken by the jury while considering upon their verdict. The declaration is not evidence. It is a technical legal document, requiring a knowledge of common law pleading to correctly interpret, and it cannot be intelligently applied to facts in evidence without interpretation. It would seem to us that ordinarily a declaration would be more liable to confuse than enlighten the jury. The instructions upon the law of the case generally include sufficient explanation as to the relation of the issues joined by the pleadings to the facts. As held in Fish v. Farwell, 160 Ill., 236, the interpretation to be placed upon pleadings is a question of law for the court, not of fact for the jury.

There was no evidence tending to sustain the allegation of the fifth count, that appellant employed and retained reckless, careless and incompetent motormen and conductors, and that by a certain unskilled, reckless and careless motorman the car was so negligently managed as to run it against deceased, etc. It was error to allow the case to go to the jury under this count, and in failing to give the instruction asked excluding it. This error becomes more flagrant and injurious when it is borne in mind that the court by instruction 5 authorized a recovery upon any count in the declaration except the sixth and seventh, and its perniciousness is obvious. In terms such direction was repeated in several other of the instructions given. Evidence of other negligent acts of the motorman, or a general inquiry into his ompetency or incompetency was the tender of a false issue.

The inquiry should have been directed and confined to the motorman's actions and conduct as to his management and control of the car at the time of the accident. So far as the evidence diverted from this course, it was erroneous. C. & A. Ry. v. Hodge, 55 Ill. App., 166.

It was not error to sustain the demurrers to the pleas of the Statute of Limitations. While it is usual in practice to aver in all the counts of the declaration, in cases of this character, that the intestate left next of kin, yet it is not necessary so to do. If the averment appears in one count, the statutory requirement necessary to maintain the action has been met. Afterwards filing additional counts, or an amended declaration making an averment of survivorship in each count, is not the statement of a new cause of action, but a restatement in an amplified form of the cause of action stated in that count of the original declaration. L. S. & M. S. Ry. Co. v. Hession, 150 Ill., 557; Chicago C. Ry. v. Hackendahl, 188 *ibid.*, 300; Enright v. Gibson, 119 Ill. App., 411.

The cases cited by appellant's counsel have no application, for the reason that in those cases there was an entire lack of the averment in any count of next of kin surviving. In the case at bar the averment of next of kin in the one count was all-sufficient to arrest the running of the statute.

It was not error to admit evidence of the rules of appellant governing motormen. After notice to appellant it failed to produce them, and they were then proven by the testimony of a conductor who had worked under them for appellant and was familiar with them. City of Chicago v. Saldman, 225 Ill., 625. We think the rules about which conductor Murray testified were shown by his evidence to be those in force at the time of the accident.

While it was not error to prove the arrest of the motorman at the time of the accident, it became error to refuse to permit evidence to be given as to the cause and reason of such arrest. In the condition of the testimony in relation to the arrest, it was calculated to leave an impression

upon the minds of the jury that there was something culpable in the conduct of the motorman at the time of the accident which brought it about. Chicago C. Ry. v. Uhter, 212 Ill., 174.

Appellant's first instruction was properly refused because it stated simply an abstract proposition of law. Instruction 2 should have been given, for the reason already stated, that there was no evidence tending to support the averments of the fifth count of the amended declaration. At the request of appellant the court gave 19 instructions to the jury, which when read together as a series fairly and fully, we think, except as herein otherwise stated, presented all the law on the several theories and defenses of appellant, and furnished a sufficient guide to the jury in their deliberations, from which they could arrive at a correct conclusion thereon. We think instructions 26 and 27 substantially covered all the elements of damage for which appellee was entitled to recover compensation. They specifically enumerated them, and instruction 26 expressly told the jury that they could not "award exemplary or vindictive damages." Instruction 11, given at the instance of appellee, is:

"The court instructs the jury that the law provides that whenever the death of a person shall be caused by the wrongful act, neglect or default of any person, company or corporation who or which would have been liable if death had not ensued, to the party injured, the administrator or executor of such deceased person may bring a suit against the person, company or corporation whose negligence was the cause of death for the benefit of the next of kin of such deceased person. And the law also provides that in such suit or action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injury resulting from such death to the next of kin of such deceased person, not exceeding the sum of $10,000."

This instruction, and many others of like import, have been held vicious in a number of cases; among them: Mur-

en Coal & Ice Co. v. Howell, 204 Ill., 515, and cases there cited; Ills. Terminal R. R. Co. v. Thompson, 210 *ibid.*, 226; I. C. R. R. v. Johnson, 221 *ibid.*, 42, Laporte v. Wallace, 89 Ill. App., 517; I. C. R. R. v. Becker, 119 *ibid.*, 221.

The error here apparent was not cured by any other instruction given.

For the errors indicated the judgment of the Superior Court is reversed and the cause remanded for a new trial in accord with the views here expressed.

*Reversed and remanded.*