Emma Paliokaitis et al., Appellees, v. Checker Taxi Company et al., Appellants.

Gen. No. 43,001.

Opinion filed October 11, 1944. Released for publication October 27, 1944.

WYATT JACOBS and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, all of Chicago, for appellants; WILLIAM H. SYMMES, DAVID JACKER and JOHN M. O'CONNOR, JR., all of Chicago, of counsel.

KAMIN, GLEASON & KAMIN, of Chicago, for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Emma Paliokaitis and Carlyle Paliokaitis, a minor, by James Paliokaitis, his father and next friend, in a complaint filed in the circuit court of Cook county against the Checker Taxi Company and Harold Johnson, sought damages for personal injuries. Various acts of negligence were charged. Issue was joined. A trial before the court and a jury resulted in a verdict for Carlyle Paliokaitis in the sum of $750 and for Emma Paliokaitis in the sum of $100. Defendants' motion for a new trial was overruled and judgment was entered on the verdict. Defendants appeal.

About 1:20 in the afternoon of August 21, 1942 plaintiffs were riding west on Webster avenue in Chicago as passengers in the Oldsmobile sedan of Roger Clark. It was a bright day and the weather was good. Clark was from Connecticut and, with his family, was staying at the home of plaintiffs, his relatives. He wanted to take his family for a ride in Lincoln Park and had asked Emma and her children to go along. They did and were on their way home from the park, going west on Webster avenue. Clark was driving. The son of Emma and James Paliokaitis, Jimmy, and Clark's son, Robert, were in the front seat with the driver. Mrs. Clark, her daughter Audrey and the two plaintiffs were in the rear seat. Emma Paliokaitis is the mother of Carlyle, then an infant of 17 months. Carlyle was sitting to the extreme right in a small metal seat hooked to the back and side of the car. Webster avenue, 36 or 38 feet wide, runs in an easterly and westerly direction. Southport avenue, approximately the same width, runs in a northerly and southerly direction. There are two sets of street car tracks on Southport avenue, one for northbound and one for southbound cars. There are no street car tracks on

Webster avenue at that point. The neighborhood is a mixed business, residential and manufacturing district. Southport avenue to the north of Webster avenue has some industrial plants and fenced in vacant lots, and there are some stores. On the southwest corner of the intersection is a vacant lot; on the northwest corner is a one story frame building with a tavern; on the northeast corner a two story building with a grocery store; and on the southeast corner a three story building with a restaurant. The cab was being driven south on Southport avenue by Harold Johnson, the individual defendant. He was answering a call to pick up a passenger at that intersection. Emma, the only occurrence witness for plaintiffs, testified that Mr. Clark stopped his car at Southport avenue, at which time the cab was about a half block north, or to the right, and that the Oldsmobile car in which plaintiffs were riding started up and reached about the middle of the street, at which time she looked again to her right and saw the cab coming very fast. In her opinion the cab was going about 40 miles an hour when she first saw it. The right front side of the Oldsmobile was hit. She testified that it was a "very heavy impact." Carlyle was thrown from his seat to the floor. Emma tried to catch him and fell over him. Emma's right hip and right chest were hurt slightly. A physician called by plaintiffs testified that Carlyle received a direct hernia from trauma. A physician called by defendants testified that Carlyle had an indirect inguinal hernia and that it was not caused from trauma.

Harold Johnson, the individual defendant, testified that when he was in the middle of the block north of Webster avenue his car was traveling at a speed of 20 miles an hour; that as he approached Webster avenue his speed was reduced to 15 or 16 miles an hour; that there was a truck parked facing east on the north side of Webster avenue, east of Southport avenue, at the curb adjoining the store on the northeast corner; that

he saw the Oldsmobile when it "leaped into view in the middle of the street," at which time the cab was 15 feet from the intersection; that he saw the Oldsmobile when it came into view and that it was "going 15 to 20 miles an hour, approximately;" that it stopped right in the middle of the street; that it was facing west when it stopped; that the bumper of the cab hit the front fender of the Oldsmobile; that after the occurrence the cars were "in the same position," the Oldsmobile facing west and the cab facing south. There were only two occurrence witnesses, namely, Emma Paliokaitis and Harold Johnson. It is not disputed that plaintiffs were in the exercise of due care and caution for their own safety. A question of fact was presented to the jury as to whether the defendants were guilty of the negligence charged to be the proximate cause of the injuries. We have not attempted to summarize all of the evidence.

The first point presented by defendants is that counsel for plaintiffs was guilty of improper conduct because of which the trial court should have granted a new trial. Defendants called two police officers, William Currin and Bernard Glavin. They arrived after the accident and made a routine examination as to the condition of the streets. They were members of the Accident Prevention Squad. They testified on direct examination that there were no skid marks. On cross-examination plaintiffs' counsel asked Officer Currin about certain reports he and his partner made. He testified that it was a routine matter to take or attempt to take statements of the drivers of cars involved in accidents; that he took the statement of the Oldsmobile driver, and that the driver of the cab gave "half of a statement." He was then shown two documents, marked plaintiffs' Exhibits 1 and 2, for identification, and plaintiffs' counsel began cross-examining him about them. It developed that plaintiffs' Exhibit 1 was a statement taken from Roger Clark, the driver of

the Oldsmobile. The attorney for defendants objected to the witness being cross-examined as to this statement. Officer Currin testified that the statement was taken by his partner, Officer Glavin. The witness was permitted to state that it was customary for one officer to take the statement and for the other officer to be present at the time it was taken. The witness was shown plaintiffs' Exhibit 2 for identification, and asked, over objection, "if that is what you meant when you said a half statement was taken from the other driver." Witness answered in the affirmative. The witness was then asked as to whether the driver of the cab told him his "story how the accident occurred," and, over objection, he answered, "No, sir, what is on the statement is all he told us." At this juncture the attorneys conferred with the court in chambers. The attorney for defendants moved to withdraw a juror and for the declaration of a mistrial. Plaintiffs' attorney admitted that the statement of Mr. Clark could only go into evidence by agreement. Defendants' attorney argued that the attempt to introduce the statement of Mr. Clark in the presence of the jurors was prejudicial. In chambers the court announced he would sustain the objections to the proffered exhibits, but denied the motion to withdraw a juror and to declare a mistrial. The court directed the jury to disregard the two proffered exhibits. The only theory upon which Exhibits 1 and 2 might be admissible would be that they were impeaching. It is obvious that Exhibit 1, the statement made by Mr. Clark, was not impeaching. Clark did not testify. Exhibit 2, the so-called "half statement," was not impeaching. When called by plaintiffs under section 60 of the Civil Practice Act [Ill. Rev. Stat. 1943, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060], Johnson testified that he told the police "just off hand how the accident happened." He did not testify that he gave them a statement. Exhibit 2 contains the question: "Do you wish

to make a statement?'' and the answer, ''No, company rules.'' We are of the opinion that Exhibits 1 and 2 were not admissible and that the conduct of counsel for plaintiffs in exhibiting them in the presence of the jury was prejudicial to a fair trial for defendants.

Plaintiffs also offered in evidence Exhibits 3 and 4, being copies of accident reports made out by the police officers. The court declined to receive them in evidence. Plaintiffs did not contend that the court erred in so ruling. We agree that proffered Exhibits 3 and 4 were not admissible. They did not impeach Johnson. They were made out about one and one half hours after the occurrence. All the officers knew about the occurrence was what they learned when they arrived on the scene. Their statements necessarily contained their conclusions as to how the accident occurred. The offer of these documents was also improper. We agree with defendants that the conduct of plaintiffs' counsel made it appear that defendants were responsible for keeping Clark's statement from the jury, thus giving the impression that it was unfavorable, or the defendants would not have objected to it. We also agree with defendants that whether Johnson wanted to give a statement to the police, whether he refused to give a statement, or whether or not the defendant corporation had a rule against statements, was immaterial and tended to create a prejudice against defendants. We agree with defendants that the attempt to introduce the exhibits might give the jury the impression that Clark, the driver of plaintiffs' car, had given the police a full statement, but that the individual defendant, Johnson, refused to give a written statement, and that Johnson, being unwilling to give a statement, must be guilty. This was a close case on the facts. The improper conduct of plaintiffs' counsel deprived defendants of a fair trial. In a clear case this court will reverse a judgment because of the improper conduct of counsel. In our opinion the court should have granted a new trial because of such misconduct.

Defendants complain of the giving of the following instruction:

"You are instructed that, if the negligence of two or more persons unite in causing an accident by which the plaintiff was injured, it is no defense for one of such wrongdoers to show that the other wrongdoer is also to blame in causing such accident."

In *Grifenhan v. Chicago Rys. Co.*, 299 Ill. 590, a similar instruction was condemned. The court stated that as an abstract proposition of law there was nothing materially wrong with the instruction, but that in view of the record in the case it was nearly certain to mislead the jury. Under the factual situation of the instant case the instruction was misleading and on a retrial should not be given. Defendants also complain of instruction No. 21 as to the law pertaining to the right of way. This instruction required the jury, in its determination of which car reached the intersection first, to disregard the actual speed of the vehicles and to confine itself to a supposititious case where both cars are traveling "within the lawful limits of speed." We agree with defendants that it is the actual speed of the vehicles and their respective distances from the intersection that governs. *Krawitz v. Levinstein*, 320 Ill. App. 618, 622. The criticism voiced by defendants as to instruction No. 21 is valid. It is unnecessary to consider the contention of defendants that the judgment is against the manifest weight of the evidence.

The judgment of the circuit court of Cook county is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.

*Judgment reversed and cause remanded with directions.*

KILEY and LUPE, JJ., concur.