303 F.2d 449
 Elmer J. JACOBSEN, Individually, and Elmer J. Jacobsen,
Administrator of the Estate of Elizabeth Jacobsen,
Deceased, Plaintiffs-Appellees,
v.
ANDERSON TRUCKING SERVICE, INC., a Corporation, and Gerald
M. Murphy, Defendants-Appellants.
 No. 13588.
 United States Court of Appeals Seventh Circuit.
 June 18, 1962.
 
 Wyatt Jacobs, Chicago, Ill., Lloyd E. Williams, Jr., and Norton Wasserman, Charles D. Snewind, Chicago, Ill., of counsel, for appellant.
 Edward J. Kelly, Chicago, Ill., John T. Coburn, Chicago, Ill., for appellees.
 Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 Plaintiff, Elmer J. Jacobsen, brought this suit individually and as administrator of the estate of Elizabeth Jacobsen, his wife, to recover damages occasioned by the alleged negligence of defendants, Anderson Trucking Service, Inc. and Gerald M. Murphy. The suit arose from a collision between an automobile driven by plaintiff and a truck driven by Murphy as Anderson's agent. Jurisdiction is based on diversity of citizenship. A jury returned a verdict for plaintiff upon which the District Court entered judgment. Defendants appeal from this judgment.
 
 
 2
 The collision occurred at the intersection of Routes 55 and 83 in DuPage County, Illinois, on January 10, 1960 at approximately noon. The day was overcast and the pavement wet.
 
 
 3
 Route 83 runs generally in a northsouth direction. It is a four lane highway divided by a twenty foot wide median strip. Route 55 is a two lane highway which runs generally in an eastwest direction.
 
 
 4
 There is a system of automatically controlled traffic signals at the intersection. Traffic proceeding south on Route 83 is controlled by two signals which face only northerly. One signal is on the northwest corner of the intersection and the other is on the end of the median strip south of Route 55. Traffic proceeding west on Route 55 is controlled by signals on the northeast and southwest corners of the intersection. These signals face both easterly and westerly.
 
 
 5
 Prior to the collision, Murphy was driving his tractor-trailer at 30 to 35 miles per hour in a southerly direction, in the westernmost lane of Route 83. Plaintiff was driving his automobile at 25 to 30 miles per hour in a westerly direction on Route 55. His wife was a passenger.
 
 
 6
 The impact took place in the area covered by the intersection of the westbound lane of Route 55 and the right southbound lane of Route 83. Plaintiff's automobile was struck in the right front fender and door by the left front bumper and fender of Murphy's truck. Plaintiff's wife was killed and he was injured.
 
 
 7
 The major fact question was whether plaintiff or defendant Murphy entered the intersection against the red light. Plaintiff testified that his light was red when he first saw it, some 500 feet from the intersection, but that it turned green when he was approximately 300 feet from the intersection. He further testified to the effect that he watched the light continuously except for one glance at a sign northeast of the intersection; that he noticed his light on the northeast corner was green as he passed into the intersection; and that the next thing he remembers was being in the ditch after the collision.
 
 
 8
 Murphy testified that he first noticed his light on the northwest corner when he was about 360 feet from the intersection; that the light was then green; and that the light was green when he entered the intersection. Murphy further testified that as he approached the intersection he was looking for a sign indicating where he could get onto the Illinois Tollroad and that he noticed such a sign when he was 300 to 360 feet from the intersection.
 
 
 9
 Deputy Sheriff Hoppenstedt, who interrogated Murphy at the scene of the collision, testified that Murphy told him that he 'happened to look up all of a sudden and the light had turned red for him and he applied his brakes but it was too late,' and that he repeated the admission, in effect, on two subsequent occasions. Deputy Sheriff Sarno testified that he also heard Murphy say that the light was red for him. Police Officer Maerz testified as follows:
 
 
 10
 'I asked him, to begin with, I just asked him to tell me what happened, and he told me that he was southbound on 83 and he was approaching Route 55 and he was rather unfamiliar with the area and he was looking for the toll road. As he approached the intersection he noticed that the light was green and he looked away, looking for the signs to direct him to the tollway, and when he looked back he said the light was red and just at that point he hit the car.'
 
 
 11
 Murphy denied that he told the police that he looked away from the light to find the Tollroad sign. He further denied that he told them he had entered the intersection against a red light. According to Murphy's testimony, the red light he referred to when he talked to the police was the light on the southwest corner which governed westbound traffic on Route 55.
 
 
 12
 Defendants' first contention is that they must be granted a new trial because one of the police officers testified he had arrested Murphy after the accident. The testimony was not responsive to any question by plaintiff's counsel and it was immediately struck after defendants' objection. Defendants maintain, however, that because of the closeness of the case the testimony was so prejudicial that the error could not be cured by striking the testimony. Further defendants contend the court erred in denying their offer to prove that the charge against Murphy for disobeying a red light was dismissed.
 
 
 13
 We cannot agree with defendants' contentions. Plaintiff concedes that the officer's statement was inadmissible. The statement was immediately struck and the jury was later instructed to disregard struck testimony. We believe that the prompt action on the part of the trial judge and his subsequent general instruction cured any prejudicial effect the officer's voluntary statement may have had.
 
 
 14
 Defendants cite Turner v. Lovington Coal Mining Co., 156 Ill.App. 60, and Media State Bank v. Garrett, 165 Ill.App. 69, for the proposition that when a case is close on the facts, irrelevant testimony such as that objected to here is necessarily prejudicial and its prejudicial effect cannot be cured by striking.
 
 
 15
 These cases, however, are readily distinguishable from the instant case. After examining the testimony concerning the question of which driver drove against the red light, we are convinced that this is not such a close case on the facts as to make the cases cited by defendants applicable.
 
 
 16
 Since we have decided that the trial judge's prompt action cured any prejudicial effect that the questioned testimony may have had, it naturally follows that he trial court did not err in refusing defendants' offer to prove that the charge had been dismissed. Defendants' reliance upon Chicago City Railway Co. v. Reddick, 139 Ill.App. 160, is misplaced. In Reddick the court held that evidence of the arrest of defendant's agent was admissible, and consequently, defendant had the right to show 'the cause and reason of such arrest.' In the instant case, the arrest testimony was struck; therefore, there was no reason to allow defendants to introduce evidence on an inadmissible subject removed from the jury's consideration.
 
 
 17
 Defendants' second contention is that the conduct of plaintiff's counsel in challenging defendants' counsel to put an inadmissible police report in evidence was so prejudicial as to preclude a fair trial.
 
 
 18
 During plaintiff's examination of one of the police officers who was at the scene of the accident, the officer's report was used to refresh his memory. In cross-examining the officer concerning his lack of knowledge of any witnesses to the accident, defendants' counsel asked if there was a place on the report for the names of witnesses. At this point, plaintiff's counsel objected to such interrogation concerning the report unless the report was put in evidence. The court sustained plaintiff's objection, but plaintiff's counsel went on to say, 'Do you want to put the report in evidence Mr. Jacobs? I will be happy to do it as a Plaintiff's Exhibit.'
 
 
 19
 In Paliokaitis v. Checker Taxi Co., 324 Ill.App. 21, 57 N.E.2d 216, cited by defendants, the court held that it was improper for plaintiffs' counsel to attempt to introduce in evidence, before the jury, inadmissible police reports and that because of this and other misconduct of a similar nature the defendants were deprived of a fair trial. The court pointed out that the case was close on its facts. Paliokaitis, like Turner and Media, is distinguishable because the holding applied to a case close on its facts and we have decided that the instant case is not close.
 
 
 20
 Furthermore, in Ellsworth v. Cummins, 134 Ill.App. 397, the court held that improper remarks made by counsel during his closing argument were not grounds for a new trial because the remarks were provoked by opposing counsel. In the instant case, apropos of the ruling in Ellsworth, the trial court in overruling defendants' motion for a mistrial, said:
 
 
 21
 'Now you approach the jury and hold in your hand one of these papers from which you want the jury to understand that there is a space there for the names of witnesses and there are no witnesses in this space, and at that moment, Mr. Kelly objected to the use of it and then ensued the conversation that you have been talking about here.'
 
 
 22
 We do not believe that the conduct of plaintiff's counsel in the instant case was so improper under the circumstances that it deprived defendants of a fair trial.
 
 
 23
 Defendants contend that the trial court also erred in its instruction concerning proximate cause; in denying defendants' motions for a directed verdict and for judgment notwithstanding the verdict; and in denying their motion for a new trial.
 
 
 24
 We have considered these contentions and find them without merit.
 
 
 25
 The judgment of the District Court is affirmed.