Margaret Ann PETERS, a minor, by Lillian Peters, her mother and next friend, Plaintiffs-Appellants,

v.

Daniel FITZPATRICK, Defendant-Appellee.

No. 13644.

United States Court of Appeals
Seventh Circuit.

Nov. 21, 1962.

Rehearing Denied Dec. 28, 1962.

Knoch, Circuit Judge, dissented.

Frank J. Mackey, Jr., Louis P. Miller, Chicago, Ill., for appellant.

Oswell G. Treadway, Joseph H. Hinshaw, Leonel I. Hatch, Jr., Chicago, Ill., for appellee.

Before SCHNACKENBERG, KNOCH, and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This diversity suit is to recover damages for personal injuries to a four year old child. On the trial of liability alone, the verdict and judgment were for defendant, and plaintiff has appealed.

About 7:00 o'clock on a clear, bright, dry morning in April, 1951, Mrs. Peters, mother of the plaintiff, was carrying her small baby and some goods north across Wilcox Street in Chicago. Mrs. Peters had asked Mr. and Mrs. Higgenbottom, relatives who lived in the Peters apartment, to see that her four year old child "got across." Mrs. Peters passed between two of the parked cars on the south side of the street and, when she reached the north curb, heard a screech of brakes and a "thump." She turned to see the four year old child lying in the street under the rear wheels of defendant's automobile. The Higgenbottoms were then on the south side of the street.

Plaintiff alleged defendant's negligence in failing to keep his automobile under proper control; failing to keep a proper

lookout for pedestrians; and, in violation of Illinois statutes, failure to drive carefully at a reasonable and proper speed and failure to avoid colliding with a pedestrian on the roadway.

Plaintiff-appellant contends that the verdict is without support in the evidence and that the judgment should be set aside; and claims prejudicial error in rulings on evidence and instructions.

Neither defendant, according to his testimony, nor any other witness at the trial saw what happened. The only persons who might have seen how the child was injured were the Higgenbottoms. They did not testify. Since the trial dealt only with the question of liability, there was no evidence of the child's injuries which might have shed light on the event.[1]

There was evidence which tended to prove that the child left the Higgenbottoms, passed through a vacant parking place in front of her parents' apartment, and near the center of the street was struck by the front of defendant's car and was found beneath the rear wheels about sixty feet east of the apartment. Plaintiff's attorney insisted to the jury that the circumstances showed defendant was negligent in not seeing the child; or in seeing her but in driving at such unreasonable speed that he could not stop the car to avoid hitting her.

Defendant testified to the following: He lived about three blocks west of the scene of the occurrence. He was driving to work on Wilcox Street, a one-way street for east-bound traffic. As he neared the vicinity, he noticed that cars were parked on both sides of the street and saw no child and nobody else on the street. He heard a sound like a "brushing" on the "right side of the car near the front." He felt nothing "from the wheels * * * as if they had gone over anything." He stopped the car and the injured child was beneath the car near the rear axle. The center of his car was a little to the south of the center line of

the street. Later he saw what looked like a "brush mark" along the right front fender.

The attorney for defendant argued to the jury that the child darted out between solidly parked cars and into the right front fender of defendant's car. He conceded that the child's body was beneath the rear axle of the car north of the transmission case. He argued that the child's position beneath the car did not render defendant's testimony as to the occurrence physically impossible. He also argued that even if the child had not run into the side of the car but had instead been struck by the front, defendant's failure to see her was excusable because the child was only three feet tall.

 Plaintiff has adhered, as she must, to the theory of facts she presented at the trial. Defendant was not required to have a theory at the trial, Ivy v. Chicago Transit Authority, 23 Ill.App.2d 251, 161 N.E.2d 881 (1959) and, as appellee in this court, is entitled to have the judgment sustained on any ground in the record. But if appellee adopts a theory, it must be supported by the evidence.

 The arguments on the contention that the evidence does not support the verdict have been presented by the parties relying on their respective factual theories, and our decision is limited to the issues the parties have made.

"In cases involving private rights only, courts of review properly limit their consideration to issues presented by the parties. It is the duty of the parties to raise and define clearly the issues of the case and to discuss the issues properly in the case * * *. A court of review cannot examine the record in each case to determine whether issues not raised by the parties should be considered, or whether such issues have been properly argued." Dodd & Edmunds, Illinois Appellate Procedure 783–785 (1929).[2] The appellee, by the rules of this court, must argue

---

1. Because of the child's age, no question of due care was involved.

2. Although the volume admittedly refers to Illinois appellate procedure, the material

and make clear references to those theories relied on to sustain the verdict.[3]

The only theory advanced in appellee's brief in this court against plaintiff's contention that the verdict is not supported by the evidence, is the theory that the child ran into the right front fender of defendant's car, and that defendant was not negligent because he "had no reason to anticipate that the plaintiff would dash into the street against the side of his automobile." There is no explanation of how the child could roll under the car and be found under the rear axle if she ran into the right front fender.

Wilcox Street was about forty feet wide and there was a normal upward incline of the street to the crown at the center.[4] More than half of defendant's car, when it stopped, was south of the center line of the street. The distance between the cars parked on the south side and the center of the street was about fourteen feet. If the child, unseen by the defendant, who was looking ahead, ran into the right front fender, about six to eight inches to the rear of the headlight, according to defendant's testimony, and was not run over by a wheel, how could she be under the car north of the transmission case of the rear axle? We think only under plaintiff's theory that the front of the automobile struck the child.

■ The District Court properly refused to take the case from the jury. Taking the evidence, and inferences, most favorable to the plaintiff, the record shows that the child was struck by the car of defendant, who says that he was looking ahead and did not see the child. On this testimony the inference is that he ought to have seen her. We find nothing in the record or briefs to persuade us that the child's body could be in the position in which it was found if she ran into the fender of defendant's car. There was no testimony, expert or otherwise, tending to show that it could be so. The uncontroverted physical facts do not support a verdict for the defendant on the theory argued.

■ In our opinion, the position of the child's body renders "inherently improbable" defendant's theory. See Kelly v. Jones, 290 Ill. 375, 125 N.E. 334, 8 A.L.R. 792 (1919), Spiro v. St. Louis Transit Co., 102 Mo.App. 250, 76 S.W. 684 (1903), 1–2 Moore, Facts, §§ 1281; 148–189; Annot., 8 A.L.R. 796; 1 Jones, Evidence, §§ 146, 461 (2d ed. 1926), 20 Am.Jur. § 1183. As the court noted in Spiro,

"Verdicts resting on evidence which looks contrary to the ordinary course of nature are not infrequently set aside * * * as a proper precaution against an unjust outcome of litigation. * * * This prerogative of courts of error is sparingly employed; but that it exists * * * is certain. * * * It is enough if the event found was so improbable, according to the ordinary operation of physical forces, or was so overwhelmingly disproved by credible witnesses, as to compel the conviction that the jury either failed to weigh the evidence carefully, or drew unwarranted inferences, or yielded to a partisan bias."[5]

---

relied on relates to general rules of appellate procedure, state and federal. See also Smith v. Royal Insurance Co., Limited, 93 F.2d 143 (9th Cir., 1937), 14 Cyclopedia of Federal Procedure 19–20 (3rd ed. 1952).

3. Rule 17(a) (4), of this Court, referring to the appellant's brief, provides that the "argument shall include a clear statement of the points of law or facts to be discussed * * *." Rule 17(b) provides that the "brief for appellee or respondent shall be of a like character as that required of a party seeking review." Authoritative comment on a similar rule of the Illinois Supreme Court provides that the "rule requires appellee to join in error by making a short and clear statement in his brief of the propositions by which he seeks to meet the alleged errors. * * *" 2 Illinois Law and Practice 511 (1953).

4. This fact appears from the exhibits introduced by the defendant.

5. 76 S.W. 684, at 688.

This, in our opinion, is a proper case in which we should exercise our "sparingly employed" prerogative.

We have not had the benefit of a special verdict which would disclose how the jury found the child was injured. Photographs of defendant's automobile, for instance, discussed at the trial are not before us, nor are its dimensions nor any other testimony which could shed light on this question. There is insufficient evidence upon which the jury could determine that the child's height would excuse failure to see her. Nor did the instructions define clearly the issue of the occurrence. Because of the inherent improbabilities of the defense to plaintiff's prima facie case, we think justice requires a new trial.

■ The District Court modified and gave an instruction proffered by plaintiff with respect to negligence of the parents. The instruction as given should be limited to Mrs. Peters and should not assume her negligence as it did in the second sentence.[6] We see no other error in the rulings of the District Court upon the instructions.

■ The police officer who testified as defendant's witness was asked by defendant's counsel if, during his investigation following the occurrence, he had asked defendant how fast he was going. The officer said that he had asked the question and that defendant answered, "fifteen, eighteen miles an hour." Objection was made that this was hearsay and self-serving, and the objection was overruled. There was no other direct evidence in the case as to the speed of defendant. We think the ruling was erroneous, Paliokaitis v. Checker Taxi Company, 324 Ill.App. 21, 57 N.E.2d 216 (1944).

For the reasons given, the judgment is reversed and the cause remanded for a new trial.

KNOCH, Circuit Judge (dissenting).

I regretfully find myself in disagreement with the majority of the panel. I am not satisfied that there are inherent improbabilities in the defense offered in this case. That was a matter properly left for the jury's consideration. I also have grave doubts as to whether a prima facie case was proved by the plaintiff.

I therefore would affirm the judgment of the Trial Court.

---

6. The instruction in question read as follows:

"If you find that the parents of Margaret Ann Peters, or either of them, were negligent, that negligence shall not be charged against her. However, the plaintiff may not recover if the parents' negligence was the sole proximate cause of the occurrence and that the defendant was not guilty of any negligence which proximately caused or contributed to cause the occurrence in question."